**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EMANUEL GODINEZ-PEREZ,

    Defendant - Appellant.

No. 17-3170
(D.C. No. 2:14-CR-20066-JAR-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **HARTZ**, Circuit Judges.
_____

Defendant Emanuel Godinez-Perez appeals from a modified sentence. In

*United States v. Godinez-Perez* (*Godinez-Perez I*), 864 F.3d 1060 (10th Cir. 2016),

we vacated Defendant's original sentence and remanded for resentencing because the

district court erred in calculating his base offense level. At resentencing, the district

court reduced Defendant's total offense level to accurately reflect Defendant's

relevant conduct and exercised its discretion not to resolve two arguments Defendant

presented for the first time at resentencing. Defendant now appeals his modified

sentence, arguing the district court committed legal error or, in the alternative,

abused its discretion, when it did not rule on the two new arguments Defendant raised

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

at resentencing. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

I.

A grand jury in the United States District Court for the District of Kansas charged Defendant and two co-defendants with conspiring to distribute and possess with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 1); distributing 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Counts 2 and 3); and possessing with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 4). Defendant pleaded guilty to all counts of the indictment without a plea agreement. The district court adopted the presentence investigation report (PSR) and sentenced Defendant to 108 months' imprisonment.

Defendant appealed this original sentence, arguing the district court plainly erred in not making particularized findings regarding relevant conduct attributable to him. Specifically, he argued the PSR did not include information linking Defendant to all of the quantities of methamphetamine that were seized during the investigation, including 887.26 grams of methamphetamine seized from a storage unit. This Court agreed, vacated Defendant's sentence, and remanded for resentencing without limiting the scope of the remand. *Godinez-Perez I*, 864 F.3d at 1071.

At Defendant's resentencing, the district court queried the parties regarding the scope of its mandate on remand. Both parties agreed the scope of this Court's

remand was not limited. The Government requested the district court to limit the scope of remand to the issue of relevant conduct—i.e., whether the 887.26 grams of methamphetamine found in the storage unit was attributable to Defendant. Defendant, on the other hand, requested the district court to consider all of his arguments, including two new arguments in favor of a downward variance. The first new argument was Defendant suffered an unwarranted sentence disparity compared to other methamphetamine traffickers nationwide simply by virtue of being prosecuted in Kansas. According to Defendant, Kansas City, Kansas probation calculates methamphetamine as "Ice" at a rate significantly higher than the national rate, which yielded a higher base offense level than he would likely face in another jurisdiction. Defendant's second new argument in favor of a downward variance was his assigned Criminal History Category I overrepresents his culpability and risk of recidivism. In support, Defendant proffered United States Sentencing Commission recidivism reports from 2004 and 2017, which indicate defendants who are "true first offenders" are less likely to recidivate than other defendants in Criminal History Category I who have been convicted of prior crimes.[2] Defendant contended he is a "true first offender" and the district court should accordingly grant him a downward variance to reflect Defendant's lower likelihood to recidivate compared to other defendants in Category I.

---

[2] Defendant defines a "true first offender" as "a defendant who has had no previous contact with law enforcement or the judicial system." Def. Op. Br. at 7 n.2 (quoting *United States v. Wyrick*, 416 F. App'x 786, 787 n.1 (10th Cir. 2011) (unpublished)).

The district court addressed all three of Defendant's arguments. First, the court addressed the relevant-conduct error this Court identified in *Godinez-Perez I*. This time, the court declined to attribute to Defendant the 887.26 grams of methamphetamine found in the storage unit. Accordingly, Defendant's total offense level decreased from 31 to 29. Because Defendant only qualified for Criminal History Category I, the offense level decrease resulted in an advisory Guidelines range of 87 to 108 months' imprisonment. The district court announced its tentative sentence of 87 months' imprisonment to be followed by two years of supervised release. Second, the district court exercised its discretion not to resolve Defendant's request for a variance based on a national "Ice" disparity. Third, the district court exercised its discretion not to resolve Defendant's request for a variance based on his "true first offender" argument.

Defendant now appeals his modified sentence arguing the district court committed legal error or, in the alternative, abused its discretion, when it did not rule on the national "Ice" disparity and "true first offender" arguments.

II.

Defendant argues it was error for the district court to limit the scope of the remand by declining to decide the two new arguments. The Government argues the district court did not err because district courts have discretion, but are not mandated, to consider new arguments and evidence at resentencing. Under the "mandate rule," "where the appellate court has not specifically limited the scope of the remand, the district court generally has discretion to expand the resentencing beyond the

4

sentencing error causing the reversal." *United States v. Moore*, 83 F.3d 1231, 1234 (10th Cir. 1996). Our precedent is clear: "[a] district court may (not must) expand the scope of resentencing absent an express limitation." *United States v. West*, 646 F.3d 745, 749 (10th Cir. 2011).

Given a district court has discretion to expand (or not) the scope of resentencing absent an express limitation, Defendant's claim fails on the merits. At resentencing, both parties agreed the Tenth Circuit did not limit the scope of the remand. Defendant stated, "I agree with [the Government] that the Tenth Circuit Court of Appeals did not limit in its mandate to this Court what it can consider in resentencing [Defendant]." ROA Vol. II at 15. In *West*, we held district courts have discretion to determine the scope of resentencing when an appellate court did not limit the scope of the remand. *West*, 646 F.3d at 749. In light of *West*, the district court did, indeed, have discretion to limit the scope of the remand. The district court, therefore, did not err as a matter of law in limiting the scope of the remand when it exercised discretion to not resolve Defendant's new arguments for a downward variance.[3]

### III.

We next turn to Defendant's alternative argument that the district court abused its discretion in declining to decide Defendant's national "Ice" disparity and "true first offender" arguments. As explained above, the district court did indeed have

---

[3] The Government also argues Defendant waived or forfeited this issue. We need not address waiver or forfeiture because the resolution of either is inconsequential given we find no error.

discretion on whether it would hear issues not previously presented. *See supra* Part II. "Thus, a court's decision to limit the scope of re-sentencing is reviewed for abuse of discretion." *United States v. Burns*, 622 F. App'x 761, 762 (10th Cir. 2015) (unpublished) (discussing *West*, 646 F.3d at 749). A district court abuses its discretion when it "relies on an incorrect conclusion of law or a clearly erroneous finding of fact," or when it makes a choice that is "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013); *United States v. DeRusse*, 859 F.3d 1232, 1236 (10th Cir. 2017).

## A.

Defendant argues the district court abused its discretion in refusing to rule on his national "Ice" disparity argument for a downward variance. The district court allowed Defendant to put on evidence, considered the parties' arguments, and exercised its discretion not to resolve Defendant's request for a variance. To argue for a mitigating sentence adjustment, Defendant bears the burden of proving he is entitled to such an adjustment. *United States v. Williams*, 374 F.3d 941, 947 (10th Cir. 2004) (quoting *United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir. 1990)).

Defendant's national "Ice" disparity argument is rooted in the Sentencing Guidelines Drug Quantity Tables, which recommend a higher base offense level for higher purity methamphetamine. *See* U.S. Sentencing Guidelines Manual § 2D1.1 (U.S. Sentencing Comm'n 2015). The Guidelines classify methamphetamine into three possible categories: (1) controlled-substance mixture (disregarding purity or purity unknown); (2) actual methamphetamine (purity known, counting only the pure

6

substance); or (3) "Ice" (a mixture or substance of at least 80% purity, in which case the entire mixture is counted). *See id.*; ROA Vol. I at 104 n.19. Defendant claims Drug Enforcement Agency reports and the Commission's data files show a significant disparity across judicial districts in the treatment of methamphetamine as a mixture, actual, or "Ice" methamphetamine. Specifically, he points to evidence that in 2015, 73% of defendants prosecuted for methamphetamine-related charges in the District of Kansas were sentenced for "Ice," whereas only 10% of defendants prosecuted nationwide were sentenced for "Ice" during the same year. Def. Op. Br. at 8–9. Defendant argues such disparity violates 18 U.S.C. § 3553(a)(6), which requires district courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

At resentencing, the court acknowledged it had discretion and exercised its discretion not to resolve Defendant's disparity argument. The court stated, "The Court exercises its discretion to not entertain the bases for the request for variance on the basis of a nationwide disparity and on the basis of first time . . . offender." ROA Vol. II at 70. The court further explained, "although the defendant has submitted a number of statistics . . . , there are some key questions that would remain unanswered on this record as to how the Court is to go about analyzing that data, such as are there any warranted disparities? To the extent there is disparity, is it unwarranted . . .[?]" *Id*. at 71. The district court pointed out several inadequacies in the data provided by Defendant, identified multiple scenarios in which "Ice" disparities would be

7

warranted, and therefore exercised its discretion not to resolve Defendant's request for a variance. *Id.* at 71–72 (explaining, for example, prosecutorial priorities may warrant disparities among districts).

Given Defendant had the burden of proof for sentence decreases and the district court had discretion to limit the scope of the remand, the district court was neither arbitrary nor manifestly unreasonable in exercising its discretion not to resolve the national "Ice" disparity because Defendant failed to adduce sufficient evidence that any alleged sentence disparity was unwarranted. The district court raised numerous examples of circumstances that would create warranted disparities including prosecutorial priorities focused on methamphetamine trafficking to the exclusion of other drugs. The court did not, as Defendant argues, refuse to rule on his arguments for a variance. The court, instead, properly heard the arguments, considered the data, and found the record left too many questions to decide the issue. Accordingly, the district court did not abuse its discretion when it exercised its discretion not to resolve Defendant's request for a variance based on a national "Ice" disparity.[4]

---

[4] Even if there were error, any error was harmless because the record leaves no doubt that the district court would have denied the request because Defendant failed to meet his burden to show that any disparity was unwarranted, as required under 18 U.S.C. § 3553(a)(6). ROA Vol. II at 77 ("And I . . . want to point out that it's not disparity, it's unwarranted disparity is the standard. And merely providing data that there . . . is disparity does not answer the question whether the disparity is warranted or not.").

B.

Defendant also contends the district court abused its discretion in refusing to rule on his "true first offender" argument at resentencing. According to Defendant, the district court's refusal to rule on the issue was manifestly unreasonable because its reasoning "[did] not stand up to legal or factual scrutiny." Def. Op. Br. at 34.

At resentencing, Defendant argued a downward variance based on his status as a "true first offender" was appropriate because he was less likely to recidivate than other defendants classified in Criminal History Category I. To support his argument, Defendant proffered evidence of his lack of prior criminal convictions, a May 2004 Commission Recidivism Study, and a May 2017 Commission Study.[5] The district court considered the sentencing guidelines, all statements and submissions of the parties, the second amended PSR, Defendant's allocution, and Defendant's history and characteristics. Then the district court explained,

> I exercise my discretion not to entertain the argument for a variance on the basis of a true first offender. As the [G]overnment posited, the Sentencing Commission has not adopted this report and it's a very old report. Again, on the basis of this record and the fact that it has only been raised now post-remand for resentencing, I exercise my discretion not to try to dive into this data. It strikes me also that on this record I would not have a complete picture anyway to make a truly informed decision about that.

---

[5] The May 2004 United States Sentencing Commission study found defendants with no previous contact with law enforcement or the judicial system—so-called "true first offenders"—have lower recidivism rates than other defendants in Criminal History Category I with prior arrests or convictions. *See* U.S. Sentencing Comm'n, Recidivism and the "First Offender" (May 2004) at 13.

ROA Vol. II at 72. Defendant argues the district court's factual finding that the Commission's recidivism data was "old" and that "it hasn't adopted a more recent report" was "simply wrong" and rendered its refusal to rule on the argument an abuse of discretion. Def. Op. Br. at 35.

Given again that Defendant had the burden of proof for sentence decreases and the district court had discretion to limit the scope of the remand, the district court was neither arbitrary nor manifestly unreasonable in exercising its discretion not to resolve the "true first offender" argument because Defendant failed to adduce sufficient evidence that he qualified as a "true first offender." For instance, the Government raised two potentially disqualifying facts about Defendant's history. First, the Government questioned whether Defendant's unlawful presence in the United States as an undocumented alien disqualifies Defendant. ROA Vol. II at 58. Second, an August 2014 arrest for "Alien Inadmissibility" mentioned in the Second Amended PSR indicates Defendant did have previous contact with law enforcement. ROA Vol. III at 62. By Defendant's own definition, a prior arrest would be disqualifying. On this record, it remains an open question whether Defendant would qualify as a "true first offender." The district court correctly determined the record did not provide a clear picture whether Defendant qualified as a "true first offender" or whether the Commission considered recidivism rates for undocumented aliens in analyzing recidivism data. Accordingly, the district court acted within its discretion when it exercised its discretion not to resolve Defendant's "true first offender" argument.

10

C.

Defendant also claims the district court abused its discretion in refusing to vary downward based on evidence of his post-conviction conduct, including Defendant's participation in educational classes while in custody. Defendant contends the district court abused its discretion when it explained it would not consider the argument because it was only raised post-remand. According to Defendant, not ruling on the argument because it was only raised post-remand violates the holding in *Pepper v. United States*, which held a district court may consider evidence of post-conviction conduct at resentencing. *Pepper v. United States*, 562 U.S. 476, 481 (2011).

According to the Government, Defendant waived this *Pepper* argument because he did not raise the post-conviction conduct argument at the resentencing hearing. Defendant contends he did raise the argument because it was "clearly linked" to his "true first offender" argument. Def. Rep. Br. at 12. "We typically find waiver . . . where a party attempts to reassert an argument that it previously raised and abandoned below." *United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008). The record indicates Defendant raised his post-conviction conduct argument very briefly in his sentencing memorandum and again at resentencing. ROA Vol. I at 122–23; ROA Vol. II at 19–20. Notably, Defendant did not tie the post-conviction conduct argument to the "true first offender" argument in his sentencing memorandum and, instead, described it as "another reason to vary downward." ROA Vol. I at 123. Additionally, Defendant's post-conviction conduct

11

discussion at resentencing was undeveloped and made no mention of his status as a "true first offender." Then, when the district court specifically asked whether there were any other arguments (in addition to the intra-case disparity, national disparity, and "true first offender"), Defendant abandoned the post-conviction conduct argument when he responded in the negative. ROA Vol. II at 20–21.

Defendant now attempts to combine the two arguments to avoid waiver, despite his explanations below that his behavior while in custody was merely "consistent" with his alleged "true first offender" status and "another reason to vary downward." ROA Vol. I at 123. This Court is not persuaded the "true first offender" argument subsumes the issue of post-sentencing conduct because "true first offender" status relates to pre-arrest conduct, whereas post-conviction conduct necessarily relates to post-arrest conduct. That Defendant's conduct in custody is consistent with a "true first offender" is not sufficient to preserve the post-conviction conduct argument given Defendant's unequivocal response that he had no further issues. Defendant, therefore, waived appellate review of his post-conviction conduct argument.[6]

---

[6] Even if we were convinced the post-conviction conduct and "true first offender" arguments were sufficiently linked to constitute a single issue, Defendant's argument would be unavailing. The district court allowed Defendant to put on evidence of his rehabilitation and the district court considered it. Based on the record, Plaintiff failed to meet his burden to show he qualified for "true first offender" status. Accordingly, it was not an abuse of discretion to exercise its discretion not to resolve the "true first offender" argument because the record did not provide a complete picture for the district court. *See discussion supra* Part III.B.

Accordingly, the district court acted within its discretion when it exercised its discretion not to resolve such arguments.

AFFIRMED.

Entered for the Court


Bobby R. Baldock
Circuit Judge